IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

TELLY ROYSTER,                          :
                                        :
        Plaintiff                       :
                                        :       CIVIL NO. 3:CV-13-1449
    v.                                  :
                                        :       (Judge Caputo)
CORIZON, *et al.*,                      :
                                        :
        Defendants                      :

## M E M O R A N D U M

### I.    Introduction

Telly Royster, an Pennsylvania inmate formerly housed at the Camp Hill
State Correctional Institution (SCI-Camp Hill), in Camp Hill, Pennsylvania,[1] initiated
this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 on March 31, 2013.  (Doc.
1-1, Compl.)  In sum, Mr. Royster alleges defendants repeatedly delayed dispensing
his prescription migraine medication, and when he complained, they retaliated
against him by re-writing the script making it more difficult for him to receive his
medicine when needed.  Mr. Royster also presents a state claim of medical
negligence against various medical defendants for their failure to provide his
medication as prescribed by his physicians, unreasonably delaying the delivery of
medication which subjected him to protracted migraines without access to his pain

---

[1] Mr. Royster is presently confined at SCI-Mahanoy, in Frackville, Pennsylvania.

medication.  Finally, he claims that prison administrators knew of his on-going problems in accessing his migraine medication but failed to take any corrective action.

Presently before the Court are the Corizon[2] medical defendants' (Corizon, Drs. Binion and Voorstad) and the Pennsylvania Department of Corrections (DOC) defendants' Motions to Dismiss (Docs. 6 and19).[3]

For the reasons that follow, the Corizon medical defendants' and the DOC defendants' motions to dismiss will be granted in part and denied in part.

## II.   Standard of Review

Federal Rule of Civil Procedure12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted.  See Fed. R. Civ. P. 12(b)(6).  In considering a Rule 12(b)(6) motion the Court's role is limited to determining whether a plaintiff is entitled to offer evidence in support of his or her claims.  See Semerenko v. Cendant Corp., 223 F.3d 165, 173 (3d Cir. 2000).  The Court does not consider whether a plaintiff will ultimately prevail. See id.  A defendant bears the burden of establishing that a plaintiff's complaint fails

---

[2] Corizon, formerly PHS, is the contract care medical care provider at SCI-Camp Hill.

[3] The following SCI-Camp Hill employees are named as defendants: Retired (Ret.) Superintendent (Supt.) Jeffrey Ditty; Ret. Supt. Richard Southers; Deputy Supt. Timothy Henry; Ret. Corrections Health Care Administrator (CHCA) Teresa Law; Acting CHCA Edward Shoop; Lt. Gardner; Lt. Kuzar; Sgt. Cook; Sgt. Ayers; Sgt. Flinn; Corrections Officer (CO) Santucci; CO Evans; CO Stum; CO Britton; CO Brosious; Unit Manager Chris Chambers; Melissa O'Brien, LPN; Mary Henderson, LPN; Danielle McGrath, LPN; Sherry Thiombiano, LPN; Judith Hamovitz, RN; Lisa Duncan, LPN; Shannon Quigley, RN; Erica Gipe, LPN; Beth Herb, RN; Melinda Radle-Barrett, LPN; Evirta Gadsden, RN; Nurse Tiffany; and Lori Liddick, LPN.

to state a claim. *See Gould Elecs. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000).

"A pleading that states a claim for relief must contain ... a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a). The statement required by Rule 8(a)(2) must "'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007) (per curiam) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007)). Detailed factual allegations are not required. *Twombly*, 550 U.S. at 555, 127 S.Ct. at 1964. However, mere conclusory statements will not do; "a complaint must do more than allege the plaintiff's entitlement to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Instead, a complaint must "show" this entitlement by alleging sufficient facts. (*Id.*) "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S.Ct. 1937, 1950, 173 L.Ed.2d 868 (2009). As such, "[t]he touchstone of the pleading standard is plausibility." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678, 129 S.Ct. at 1949. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.,* at 679, 556 U.S. 662, 129 S.Ct. at 1950. "A

claim has facial plausibility when a plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678, 129 S.Ct. at 1949. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.,* at 678, 129 S.Ct. at 1949. The court is " 'not bound to accept as true a legal conclusion couched as a factual allegation.' " *Id.* at 678, 129 S.Ct. at 1950 (quoting *Twombly,* 550 U.S. at 555, 127 S.Ct. at 1965); *see also PA Prison Soc. v. Cortes,* 622 F.3d 215, 233 (3d Cir. 2010).

The inquiry at the motion to dismiss stage "is normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Malleus v. George,* 641 F.3d 560, 563 (3d Cir. 2011). If a party opposing a motion to dismiss does not "nudge [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly,* 550 U.S. at 570, 127 S.Ct. at 1974.

*Pro se* pleadings are held to a less stringent standard than formal pleadings drafted by attorneys. *See Erickson v. Pardus,* 551 U.S. 89, 94, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007); *Giles v. Kearney,* 571 F.3d 318, 322 (3d Cir. 2009). However, under no circumstance is a court required to accept bald assertions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. *See In re Rockefeller Ctr. Props., Inc. Sec. Litig.,* 311 F.3d 198, 215 (3d

-4-

Cir. 2002); *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 n. 8 (3d Cir. 1997).

*Pro se* litigants are to be granted leave to file a curative amended complaint even

when a plaintiff does not seek leave to amend, unless such an amendment would

be inequitable or futile. *See DelRio-Mocci v. Connonlly Prop., Inc.*, 672 F.3d 241,

251 (3d Cir. 2012). However, a complaint that sets forth facts which affirmatively

demonstrate that the plaintiff has no right to recover is properly dismissed without

leave to amend. *Grayson v. Mayview State Hospital*, 293 F.3d 103, 106 (3d Cir.

2002).

III.   **Procedural History and Allegations of the Complaint**

On March 31, 2013, Mr. Royster initiated this *pro se* civil rights action in the

Cumberland County Court of Common Pleas.  The Corizon medical defendants

removed the action to this Court.  (Doc. 1, Notice of Removal.)  On July 12, 2013,

the Corizon defendants filed a motion to dismiss.  (Doc. 6.)  When Mr. Royster failed

to timely respond to the Corizon defendants' motion, the Court granted him an

enlargement of time to oppose that motion and noted that the DOC defendants had

been inadvertently omitted from the docket.  (Doc. 16.)  Consequently, the DOC

defendants were directed to file a response to the Complaint.  (*Id.*)  On January 16,

2014, the DOC defendants filed a motion to dismiss the complaint.  (Doc. 19, DOC

Defs' Mot. to Dismiss.)  Mr. Royster has filed opposition briefs challenging both sets

of defendants' motions to dismiss.  *See* Docs. 18 and 21.  Neither the Corizon

defendants, nor the DOC defendants, filed reply briefs.  As such, the motions to

dismiss are ripe for disposition.

Mr. Royster alleges the following in his Complaint. At some unspecified point in his incarceration, Mr. Royster was diagnosed as suffering from painful migraines. (Doc. 1-1, Compl. ¶¶ 6-7.) He experiences migraines several times a week which last anywhere from three to seventeen hours per occurrence. (*Id.*, ¶ 7.) In March 2011, he was prescribed Fioricet as needed, or *pro re nata* (PRN). (*Id.*, ¶ 8.) When he experienced a migraine and needed his medication, Mr. Royster would notify security staff, who in turn, notified the medical staff of his request. (*Id.*, ¶¶ 9-10.) The medical staff was responsible for delivering the medication to his housing unit in a timely manner, "anywhere from ten minutes to one hour at most." (*Id.*, ¶ 11.)

Between March 2011 and April 2012, on approximately 45 occasions, Mr. Royster waited more than 6 hours in excruciating pain before receiving his migraine medication, if he received it at all. (*Id.*, ¶ 12). He avers the delays were either due to security staff failing to timely notify the medical department of his need for the medication, or because once notified, the medical department failed to promptly deliver his medication. (*Id.*, ¶¶ 12-14.) Mr. Royster names the following security staff members as failing to timely relay his request for pain medication to the medical staff: Chambers; Gardner; Kuzar; Cook; Ayres; Flinn; Santucci; Evans; Stum; Britton and Brosius. (*Id.*, ¶ 13.) He claims the following prison medical staff were responsible for the delayed delivery of his medication: Nurse O'Brien; Nurse Duncan; Nurse Quigley; Nurse Gipe; Nurse Radle-Barrett; Nurse McGrath; Nurse Gadsden; Nurse Thiombiano; Nurse Tiffany; Nurse Hamovitz; Nurse Liddick; and Nurse Herb. (*Id.*, ¶ 14.)

-6-

During this time Mr. Royster made numerous unsuccessful attempts to resolve this continuing problem with Corizon; Deputy Supt. Henry; Acting CHCA Shoop; Supt. Ditty; Supt. Southers; Unit Manager Chambers; former CHCA Law; Lt. Gardner; Lt. Kuzar; Sgt. Cook; Sgt. Ayers; and Sgt. Flinn. (*Id.*, ¶ 15.) Each of these defendants is alleged to have personal knowledge of Mr. Royster's difficulties in receiving his prescribed migraine medication which caused him to repeatedly suffer extreme pain. (*Id.*, ¶ 16.)

In March or April 2012, Mr. Royster's Fioricet prescription was changed by Dr. Binion, Dr. Voorstad, and CHCA Law and CHCA Shoop. (*Id.*, ¶¶ 18-19.) Instead of being prescribed his medication on a PRN basis, his Fioricet script was rewritten in a manner that it was given to him twice daily at set times. (*Id.*) Mr. Royster claims this change in the availability of his medication was harmful because it: (1) required him to take his migraine medication regardless of whether he was suffering from a migraine or not; and (2) revoked his ability to request his medication promptly at the onset of his migraine, and forced him to wait in excruciating pain until his next scheduled dose appeared. (*Id.*, ¶ 20.) On this new delivery schedule, approximately 22 times, Mr. Royster was required to wait more then 10 hours in agonizing pain before he received his migraine medication. (*Id.*) Dr. Binion and former CHCA Law "told plaintiff that his medication order was changed to set times to prevent him from filing grievances concerning not receiving his medication." (*Id.*, ¶ 22.)

-7-

## IV.    Discussion

### A.    Section 1983 Eighth Amendment Claims.

The Eighth Amendment constitutionally protects prisoners against "unnecessary and wanton infliction of pain contrary to contemporary standards of decency." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). "Unnecessary and wanton infliction of pain" may include failure to provide adequate inmate medical care because inmates rely on prison officials to treat their medical conditions. *Estelle v. Gamble*, 429 U.S. 97, 103-04, 97 S.Ct. 285, 290-91, 50 L.Ed.2d. 251 (1976). Failure to provide adequate medical care to an inmate may therefore form the basis of an Eighth Amendment § 1983 claim. (*Id.*)

To establish an Eighth Amendment claim based on failure to provide medical care, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Id.*, at 106, 97 S.Ct. at 292. A plaintiff must show that he has "(i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003).

A medical need is serious if it "has been diagnosed by a physician as requiring treatment or is ... so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (citations omitted).

A finding of deliberate indifference must be based on what an official actually knew, rather than what a reasonable person should have known.

See *Beers–Capitol v. Whetzel*, 256 F.3d 120, 131 (3d Cir. 2001). A prison official acts with deliberate indifference to an inmate's serious medical needs when he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S.Ct. 1970, 1979, 128 L.Ed.2d 811 (1994).

Under the Eighth Amendment, only claims of unnecessary and wanton infliction of pain or deliberate indifference to the serious medical needs of a prisoner rise to the level of a constitutional violation. *Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004). "To act with deliberate indifference to serious medical needs is to recklessly disregard a substantial risk of serious harm." *Giles v. Kearney*, 571 F.3d 318, 330 (3d Cir. 2009). Such indifference may be evidenced by an intentional refusal to provide care, delayed provision of medical treatment for non-medical reasons, denial of prescribed medical treatment, denial of reasonable requests for treatment that results in suffering or risk of injury, *Durmer v. O'Carroll*, 991 F.2d 64, 68 (3d Cir. 1993), or "persistent conduct in the face of resultant pain and risk of permanent injury." *White v. Napoleon*, 897 F.2d 103, 109 (3d Cir. 1990). Deliberate indifference does not require a showing of complete failure to provide care, rather "[w]here prison authorities deny reasonable requests for medical treatment ... and such denial exposes the inmate 'to undue suffering or the threat of tangible residual injury,' deliberate indifference is manifest." *Lanzaro*, 834 F.2d at 346 (citing

*Westlake v. Lucas*, 537 F.2d 857, 860 (6th Cir.1976)). "Needless suffering resulting from the denial of simple medical care, which does not serve any penological purpose . . . violates the Eighth Amendment." *Atkinson v. Taylor*, 316 F.3d 257, 266 (3d Cir. 2003).

An inmate's mere disagreement with medical professionals "as to the proper medical treatment" of his medical complaint does not support an Eighth Amendment violation. *See Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004). A claim that a doctor or medical department was negligent does not rise to the level of an Eighth Amendment violation simply because the patient is a prisoner. *Estelle*, 429 U.S. at 106, 97 S.Ct. at 292; *see also Singletary v. Pa. Dep't of Corr.*, 266 F.3d 186, 192 n.2 (3d Cir. 2002)(claims of medical malpractice, absent evidence of a culpable state of mind, do not constitute deliberate indifference under the Eighth Amendment). Accordingly, a "medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice." *Id.* at 107, 97 S.Ct. at 293. "[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights." *Brown v. Borough of Chambersburg*, 903 F.2d 274, 278 (3d Cir. 1990).

In sum, negligence, unsuccessful medical treatment, or medical malpractice do not give rise to a § 1983 cause of action, and an inmate's disagreement with medical treatment is insufficient to establish deliberate indifference. *See Spruill,* 372 F.3d at 235; *Durmer,* 991 F.2d at 69; *Winslow v. Prison Health Servs., Inc.*, 406 F. App'x 671, 675 (3d Cir. 2011)(non-precedential)(conservative hernia treatment of

non-strangulated or incarcerated hernia rather than surgery, although not the
preferred treatment by the prisoner, did not rise to a constitutional claim).

Here, Mr. Royster's Eighth Amendment claims against the Corizon and the
DOC defendants differ. His claims against the DOC defendants revolve around 45
incidents, within the span of a year, where his prescribed migraine medication was
delayed, or not delivered at all, when he requested it. The DOC defendants claim
Mr. Royster's "allegations amount to nothing more than a simple difference of
opinion between the type of treatment he wished to receive, the (sic) and type and
frequency of treatment that was offered by the prison medical staff; [and] this is
exactly the difference of opinion that fails to state a claim for an Eighth Amendment
violation in *Durmer*." (Doc. 20, DOC Mot. to Dismiss Br., ECF p. 6.) Contrary to the
DOC defendants' assertion, Mr. Royster's allegations against them consist of more
than just "that the treatment he was offered was not to his satisfaction." (*Id.*) Mr.
Royster claims the DOC defendants, security staff and nursing staff, were
deliberately indifferent to his migraine condition. Migraines are commonly known to
be painfully debilitating. These defendants were the sole conduit for him to obtain
his prescribed medication. Without his migraine medication, Mr. Royster endured
excruciating pain. He alleges the defendants were aware of his migraine condition,
his reliance on them to provide his prescribed medication, and knew the longer they
delayed delivering his medication, the longer he would suffer a painful migraine. On
45 occasions within a year, after requesting his migraine medication, the DOC
defendants either ignored his request, or delivered his medication in an untimely
fashion, causing him to endure extended hours of pain. Mr. Royster states that the

-11-

lack of his prescribed medication worsened his pain. Clearly, Mr. Royster's allegations against the DOC defendants are more than just a mere disagreement with his treatment. The motive or reason for the delayed delivery of Mr. Royster's medication need not be proven by Mr. Royster in his Complaint. Of course, if there is insufficient evidence after discovery to support a reasonable jury finding in favor of Mr. Royster on his Eighth Amendment deliberate indifference claim under the applicable standard, the DOC defendants will have the opportunity to move for summary judgment. However, on a motion to dismiss, the Court must accept the allegations of the Complaint as true. Where, as here, Mr. Royster alleges the necessary inference that the DOC defendants possessed the required culpable state of mind in light of both the extreme severity of his condition, the obviousness of his migraine condition, and the self-evident need to treat as directed by his physicians, Mr. Royster has asserted a valid Eighth Amendment claim against them for delaying the delivery of his prescribed migraine medication. Accordingly, the Court cannot agree with the DOC defendants (Ayers, Britton, Brosious, Chambers, Cook, Duncan, Evans, Flinn, Gadsden, Gardner, Gipe, Hamovitz, Henderson, Herb, Kuzar, Liddick, McGrath, Nurse Tiffany, O'Brien, Quigley, Radle-Barrett, Santucci, Stum, and Thiombiano) that Mr. Royster has failed to state an Eighth Amendment claim against them. Their motion will be denied.

Next, the Court addresses the Corizon defendants' motion to dismiss Mr. Royster's Eighth Amendment claims against them on the basis that "there are no allegations that either doctor (Dr. Binion or Dr. Voorstad) personally prevented the administration of the headache medicine or were responsible for the change

regarding the administration of the medication." (Doc. 7, Corizon Defs.' Mot. to

Dismiss Br., ECF p. 8.) The Court agrees that Mr. Royster has failed to state a

claim against the Corizon physicians with respect to the alleged delayed delivery of

his Fioricet medication by the DOC defendants. "A defendant in a civil rights action

must have personal involvement in the alleged wrongs." *Rode v. Dellarciprete*, 845

F.2d 1195, 1207-08 (3d Cir. 1988). Mr. Royster does not assert that Drs. Binion or

Voorstad were responsible in any manner for the delayed delivery of his migraine

medication between March 2011 and April 2012. Likewise, Mr. Royster does not

assert that it was a Corizon policy that caused the delay of his medication (prior to

his script being rewritten in March or April 2012).[4] Accordingly, Mr. Royster fails to

state a claim against the Corizon defendants for their alleged involvement in the

delayed administration of his medication between March 2011 and April 2012.

However, Mr. Royster's Eighth Amendment claims against the Corizon medical

defendants do not end here.

Mr. Royster also alleges that Dr. Binion, Dr. Voorstad, CHCA Shoop and

CHCA Law rewrote his Fioricet script in April 2012, substantially changing his

___

[4] A private corporation, such as Corizon, may be sued under § 1983 for actions taken under color of state law that deprive a prisoner of adequate medical care. *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 583-84 (3d Cir. 2003). However, Corizon may not be held responsible for the acts of its employees under a theory of *respondeat superior*. *See Monell v. New York City Dep't of Soc. Serv.*, 436 U.S. 658, 691-94, 98 S.Ct. 2018, 2035-38, 56 L.Ed.2d 611 (1978); *see also Afdahl v. Cancellierie*, 463 F. App'x 104, 109 (3d Cir. 2012)(nonprecedential). Instead, to establish liability against Corizon, Mr. Royster must demonstrate that he suffered a violation of his federal rights because of a Corizon policy, practice, or custom. *See Natale*, 318 F.3d at 583-84; *see also C.N. v. Rigewood Bd. of Educ.*, 430 F.3d 159, 173 (3d Cir. 2005). After establishing that a policy or custom exists, a plaintiff must satisfy the causation requirement by demonstrating that the policy or custom was the moving force behind the injury alleged. *Watson v. Abington Twp.*, 336 F. App'x 163, 167 (3d Cir. 2009). Accordingly, this claim will be dismissed against Corizon.

access to his medication, knowing it would restrict the availability of his migraine medication to twice daily, at set times, and that extended gaps could exist between his need for the medication and its next scheduled delivery. This change in access to his medication prolonged his migraine pain until the next scheduled delivery, rather than his previous "as needed" access to his medication. He also claims the script was rewritten for non-medically motivated reasons. (Doc. 1-1, ¶ 19.) Mr. Royster's original script called for dispensing of his migraine medication on a PRN basis. His new script strictly regulates the delivery of his medication to twice daily. Contrary to the Corizon defendants' assertion, Mr. Royster feels the change in the access to his migraine medication has decreased, not increased. Due to the twice a day delivery requirement, Mr. Royster argues he is unable to request his migraine medication when needed if a migraine occurred between his two regularly scheduled deliveries. This in turn forces him to endure up to 10 hours of excruciating migraine pain before he can receive his medication if the nurse had already delivered medication to his unit earlier that day. Mr. Royster claims that based on his established frequent migraines, and prompt need for medication to alleviate his pain, defendants were deliberately indifferent to his medical needs by rewriting his Fioricet script in this manner. Thus, to the extent Mr. Royster's claims that the Corizon physicians were deliberately indifferent to his serious medical needs by extending the period of time he was required to wait for his migraine medication, especially if the change was imposed for non-medical reasons as alleged, the Court cannot grant their motion to dismiss on this claim. *See Singletary*

v. *Pennsylvania Dep't of Corr.*, 266 F.3d 186, 193 (3d Cir. 2001) (quoting *Rouse*, 182 F.3d at 197)) ("In the context of a deliberate indifference claim based on failure to provide adequate medical treatment, '[i]t is well-settled that claims of negligence or medical malpractice, *without some more culpable state of mind*, do not constitute 'deliberate indifference.' ")(emphasis added).

## B. Mr. Royster's Claims of Negligence/Medical Malpractice.

Claims of medical malpractice consist of allegations of either a negligent or unskillful performance by a physician of the duties which are devolved and incumbent upon the physician on account of the relationship with the patient or a want of proper care and skill in the performance of a professional act. *Vazquez v. CHS Prof I Practice, P.C.*, 39 A.3d 395, 397 (Pa. Super. 2012) (quoting *Quinby v. Plumsteadville Family Practice, Inc.*, 589 Pa. 183, 907 A.3d 1061, 1070-1071 (2006)). To prevail in a medical malpractice action under Pennsylvania law, the plaintiff must establish (1) a duty owed by the physician to the patient; (2) a breach of that duty; (3) that the breach was the proximate cause of the harm suffered; and (4) the damages were a direct result of the harm. *Freed v. Geisinger Med. Ctr.*, 601 Pa. 233, 971 A.2d 1202, 1206 (Pa. 2009). Pennsylvania law also requires a plaintiff asserting a claim of professional malpractice to file a Certificate of Merit (COM) either with the complaint, or within sixty (60) days thereafter. *See* Pa. R. Civ. P. 1042.3. The Third Circuit Court of Appeals has held that an affidavit of merit, a document similar to Pennsylvania's COM, is not a pleading requirements, but

"exist[s] to provide expert verification of the merits of the assertions in the complaint

so that 'malpractice claims for which there is no expert support will be terminated at

an early stage in the proceedings.'" *Nuveen Mun. Trust ex rel. Nuveen High Yield*

*Mun. Bond Fund. v. WithumSmith Brown, P.C.*, 692 F.3d 283, 303 (3d Cir.

2012)(quoting *Chamberlain v. Giampapa,* 210 F.3d 154, 160 (3d Cir. 2000).

> Pa. R. Civ. P. 1042.3 provides in pertinent part:
>
> (a) In any action based upon an allegation that a licensed professional deviated from an acceptable professional standard, the attorney for the plaintiff, or the plaintiff if not represented, shall file with the complaint or within sixty days after the filing of the complaint, a certificate of merit signed by the attorney or party that either
>
> (1) an appropriate licensed professional has supplied a written statement that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm, or
>
> (2) the claim that the defendant deviated from an acceptable professional standard is based solely on allegations that other licensed professionals from whom this defendant is responsible deviated from an acceptable professional standard, or
>
> (3) expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim.

Pa. R. Civ. P. 1042.3. "Pennsylvania Rule 1042.3, mandating a certificate of merit

in professional negligence claims, is substantive law ... and must be applied as such

by federal courts." *Liggon-Redding v. Estate of Sugarman*, 659 F.3d 258, 265 (3d

Cir. 2011). Rule 1042.3 applies to both counseled and *pro se* cases. *Perez v.*

-16-

*Griffin*, 304 F.App'x 72, 74-75 (3d Cir. 2008).

The Corizon medical defendants seek dismissal of Mr. Royster's state negligence claims against them suggesting that "[s]ince more than sixty (60) days have passed since the date the complaint was filed and a certificate of merit was not filed [by Mr. Royster] the negligence/medical malpractice claim should be dismissed." (Doc. 7, ECF p. 11.)  The Corizon defendants, who removed this matter from state court, have failed to carefully examine all of Mr. Royster's state court filings.  The very same day that Mr. Royster filed his Complaint, he filed individual certificates of merit relating to each and every medical professional named as a defendant in this case, including the Corizon defendants. *See* Doc. 3, ECF pp. 47-49.  Accordingly, the Corizon medical defendants' motion to dismiss the medical negligence/malpractice claims against them based on Mr. Royster's failure to file the requisite Certificate of Merit is denied.

Mr. Royster also asserts negligence claims related to his medical care provided by the CHCA Law, CHCA Shoop, and the various DOC nurses and licensed practical nurses.  He has filed a COM with respect to each such DOC Defendants. *See* Doc. 3.

The DOC non-medical defendants (Ditty, Southers, Henry, Gardner, Kuzar, Cook, Ayers, Flinn, Santucci, Evans, Stum, Britton, Brosious, and Chambers) argue that they are statutorily immune for suit with regards to Mr. Royster's claim of medical negligence.  Under Pennsylvania's sovereign immunity statute, "the Commonwealth, and its officials and employees acting within the scope of their duties, shall continue to enjoy sovereign and official immunity and remain immune

-17-

from suit except as the General Assembly shall specifically waive the immunity."

1 PA. CONS. STAT. ANN. § 2310.  Further, at 42 PA. CONST. STAT. ANN. § 8522, the

General Assembly specifically waived sovereign immunity in nine areas, including

cases involving medical professional liability.[5]  It is well-settled that immunity is

waived only for claims asserted against health care employees, and not to

individuals who are not medical professionals. *McCool v. Dep't of Corr.,* 984 A.2d

565, 570 (Pa. Cmwlth. 2009)(interpreting 42 PA. CONST. STAT. ANN. § 8522(b)(2)).

Accordingly, to the extent Mr. Royster asserted a medical negligence claim against

the non-medical DOC Defendants, it is dismissed on the basis of sovereign

immunity.

The DOC medical defendants (Duncan, Gadsden, Gipe, Hamovitz,

Henderson, Herb, Law, Liddick, McGrath, Nurse Tiffany, O'Brien, Quigley, Radle-

Barrett, Shoop and Thiombiano) argue that while the medical professional exception

to sovereign immunity would apply to them, *see* 42 PA. CONST. STAT. ANN. §

---

[5] The nine exceptions to sovereign immunity pursuant to 42 PA. CONS. STAT. ANN. § 8522(b) are:

> (1) the operation of any motor vehicle in the possession or control of a Commonwealth party; (2) acts of health care employees of Commonwealth agency medical facilities or institutions; (3) care, custody, or control of personal property in the possession or control of Commonwealth parties; (4) dangerous condition of Commonwealth agency real estate and sidewalks; (5) dangerous condition of highways under the jurisdiction of Commonwealth agency created by potholes or sinkholes or other similar conditions created by natural elements; (6) care, custody, or control of animals in the possession or control of a Commonwealth party; (7) sale of liquor at Pennsylvania liquor stores; (8) acts of a member of the Pennsylvania military forces; and (9) administration, manufacture and use of toxoid or vaccine.

8522(b)(2), Mr. Royster has failed to state a claim of medical negligence against them "particularly because Plaintiff fails to allege how they breached any duty owed to Plaintiff where he was being treated, albeit not to his satisfaction." (Doc. 20, DOC Defs.' Mot. to Dismiss Br., ECF pp. 11-12.) In his Complaint, Mr. Royster claims that the DOC medical defendants failed to deliver his physician prescribed migraine medication in a timely manner, or not at all, on 45 occasions during the course of a year. These omissions caused him to suffer prolonged and painful migraines. At this point, Mr. Royster has sufficiently plead that the DOC medical defendants repeatedly failed to follow his treating physicians' orders by delivering his migraine medication as prescribed. Accordingly, the DOC medical defendants' argument that Mr. Royster's medical malpractice claim must be dismissed for failure to allege how they breached any duty owed to him, must be denied.

### C.  Mr. Royster's Retaliation Claim against Corizon Physician Binion and DOC Defendants Law and Shoop.

Mr. Royster asserts a First Amendment retaliation claim, generally alleging that the Corizon physicians and DOC defendants Law and Shoop reduced his access to his pain medications, or did not treat him in a timely fashion for his migraines, in retaliation against him for filing grievances. (Doc. 1-1, ECF p. 5.)

"Retaliating against a prisoner for the exercise of his constitutional rights is unconstitutional." *Bistrian v. Levi*, 696 F.3d 352, 376 (3d Cir. 2012). "Official reprisal for protected speech 'offends the Constitution because it threatens to inhibit exercise of the protected right.' " *Hartman v. Moore*, 547 U.S. 250, 256, 126 S.Ct.

1695, 1701, 164 L.Ed.2d 441 (2006) (quoting *Crawford–El v. Britton*, 523 U.S. 574, 588, n. 10, 118 S.Ct. 1584, 1592, n. 10, 140 L.Ed.2d 759 (1998)). Retaliating against a prisoner for expressing complaints about his medical care may amount to a First Amendment violation. *See Glenn v. Barua*, 252 F. App'x 493, 499 (3d. Cir. 2007).

A prison alleging retaliation must show that: (1) he engaged in constitutionally protected conduct; (2) he suffered some "adverse action" by prison officials sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) that his protected conduct was a substantial or motivating factor in the adverse action taken against him. *See Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003). If a plaintiff establishes a prima facie case of retaliation, the burden then shifts to the prison officials to show by a preponderance of the evidence, that their actions would have been the same, even in the absence of protected activity. *Id.* at 334 ("Once a prisoner demonstrates that his exercise of a constitutional right was a substantial or motivating factor in the challenged decision, the prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest.")

The DOC medical defendants (Law and Shoop) argue that Mr. Royster has not demonstrated that his exercise of a constitutional right was a substantial or motivating factor in the decision to modify his medication delivery schedule. (Doc. 20, ECF p. 9.) The Corizon medical defendants argue that "[t]he fact that the administration of the medicine was increased can not support the burden of alleging

an 'adverse action' or a 'deprivation'" plausible to support a retaliation. (Doc. 7, ECF

p. 9.) The Court disagrees with both sets of defendants. According to Mr. Royster,

his "medication order was changed to set times to prevent him from filing grievances

concerning not receiving the medication." (Doc. 1-1, ECF p. 5.) Additionally, he

claims the change in his prescription resulted in his medication being less, not more,

available to him and did not take into account his actual medical needs. (Id.) Based

on the allegations of the Complaint, Mr. Royster has stated a plausible retaliation

claim against both set of defendants. He appears to have been engaged in a

constitutionally protected activity, i.e., filing grievances concerning his receipt of his

migraine medication, which he claims resulted in his prescription being rewritten in a

manner that reduced his access to his migraine medication, the adverse

consequence. Moreover, he was told by "Defendants Law and Binnion" that the

medication change was ordered to prevent him from filing grievances concerning his

medical care. (Id.) Accordingly, the Corizon and DOC defendants' motion to

dismiss Mr. Royster's retaliation claims against them are denied.

## D.     Lack of Personal Involvement of "Many" of the DOC Defendants.

The DOC Defendants argue that Mr. Royster "attempts to hold many of the

Defendants liable based upon a theory of *respondeat superior*," which is not a basis

of liability under § 1983. *See Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir.

1988); *see also* Doc. 20, ECF pp. 12-13. However, the DOC Defendants do not

identify which of the many defendants they believe fall within this category. The

Court will not try to guess which of the 29 named DOC defendants they seek to have dismissed under this argument without further guidance from the defendants themselves. Accordingly, the DOC Defendants' motion to dismiss "many" of the DOC Defendants based on lack of personal involvement is denied.

### E.     Mr. Royster's Claims Concerns Events between March 2011 and April 2011 are Timely Filed.

The DOC Defendants seek dismissal of any alleged violations occurring between March 2011 and April 3, 2011, as they are barred by the statute of limitations. (Doc. 20, ECF p. 14.)

The statute of limitations for a § 1983 claim is the particular state's statute of limitations for personal injury actions. *See Wallace v. Kato*, 549 U.S. 384, 390 n.3, 127 S.Ct. 1091, 1095 n.3, 166 L.Ed.2d 973 (2007). The statute of limitations for section 1983 claims arising in Pennsylvania is two years. *Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009). Pursuant to the prison mailbox rule, *see Houston v. Lack*, 487 U.S. 266, 275-76, 108 S.Ct. 2379, 2384-85, 101 L.Ed.2d 245 (1988), the Complaint was filed on March 31, 2013, when he delivered his Complaint to prison authorities for mailing to the court. *See Paluch v. Sec'y Pa. Dep't of Corr.*, 442 F. App'x 690, 693 (3d Cir. 2011)(nonprecedential); *see also* Doc. 1-1. Thus, any claims raised by Mr. Royster based on events that occurred prior to March 31, 2011, are barred by the statute of limitations. Accordingly, the DOC Defendants' motion to dismiss any claims occurring between March 2011 and April 3, 2011, as time barred granted in part and denied in part. Only Mr. Royster's claims arising prior to March

31, 2011 are time barred.

An appropriate Order follows.

**A. RICHARD CAPUTO**
**United States District Judge**

Date: April 22, 2014