# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

TELLY ROYSTER,

      Plaintiff,

      v.

PETER BINNION, et al.,

      Defendants.

CIVIL ACTION NO. 3:13-CV-01449

(CAPUTO, J.)
(SAPORITO, M.J.)

## REPORT AND RECOMMENDATION

This is a *pro se* prisoner civil rights action. At the time of the alleged wrongful conduct, plaintiff Telly Royster was a prisoner at SCI Camp Hill, located in Cumberland County, Pennsylvania. He is currently incarcerated at SCI Greene, located in Greene County, Pennsylvania.

## I. PROCEDURAL BACKGROUND

On April 3, 2013, Royster filed a civil complaint in the Cumberland County Court of Common Pleas against thirty-two defendants.[1] (Doc. 1-1).

---

[1] These include Corizon, a private company that provided medical services to SCI Camp Hill inmates under contract, and Dr. Peter Binnion and Dr. Theodoor Voorstad, two physicians employed by Corizon to provide medical services to SCI Camp Hill inmates (collectively, the "Corizon Defendants"), with the remainder being Pennsylvania Department of Corrections ("DOC") employees at SCI Camp Hill: Retired Superintendent Jeffrey Ditty; Retired Superintendent Richard Southers; Deputy
*(continued on next page)*

In his complaint, Royster alleged that, on numerous occasions between March 2011 and March 2013, corrections officers and medical staff failed to timely provide him with medicine that had been prescribed to treat his chronic headaches, which he has characterized as migraine headaches. In many instances, he alleged that either he was denied the medication altogether, or it was so tardily delivered that his headache had already subsided. In addition, he alleged that in March 2012, his prescription dosage was changed from three times daily "as needed" to a fixed dosage of twice daily in retaliation for his persistence in verbally complaining and filing written grievances about the failure of staff to timely provide him with his medication. Royster claimed that the defendants' conduct violated his Eighth Amendment right against cruel and unusual punishment, that it constituted professional negligence / medical malpractice under state

Superintendent Timothy Henry; Retired Corrections Health Care Administrator Teresa Law; Acting Corrections Health Care Administrator Edward Shoop; Lieutenant Gardner; Lieutenant Kuzar; Sergeant Cook; Sergeant Ayers; Sergeant Flinn; Corrections Officer Santucci; Corrections Officer Evans; Corrections Officer Stum; Corrections Officer Britton; Corrections Officer Brosious; Unit Manager Chris Chambers; Melissa O'Brien, LPN; Mary Henderson, LPN, Danielle McGrath, LPN; Sherry Thiombiano, LPN; Judith Hamovitz, RN; Lisa Duncan, LPN; Shannon Quigley, RN; Erica Gipe, LPN; Beth Herb, RN; Melinda Radle-Barrett, LPN; Evirta Gadsden, RN; Nurse Tiffany; and Lori Liddick, LPN (collectively, the "DOC Defendants"). (*See* Doc. 22, at 2 n.3).

tort law,[2] and that the alleged retaliation violated his First Amendment right of access to the courts. Royster's complaint sought declaratory and injunctive relief, plus compensatory and punitive damages.

On May 30, 2013, the defendants removed the state court litigation to this Court pursuant to 28 U.S.C. § 1331 and § 1441. (Doc. 1). Shortly thereafter, the Corizon Defendants and the DOC Defendants filed separate motions to dismiss the complaint for failure to state a claim. (Doc. 6; Doc. 19). On April 23, 2014, the Court granted the motions in part and denied them in part. (Doc. 22; Doc. 23).[3] Royster's Eighth Amendment claim regarding the delayed administration or dispensation of his medication was dismissed with respect to the Corizon Defendants, but permitted to

---

[2] Royster also filed certificates of merit with respect to each of the medical professionals named as defendants, as required by Pennsylvania law in all professional negligence / medical malpractice cases. (Doc. 3, at 37–55). *See generally* Pa. R. Civ. P. 1042.3(a); *Liggon-Redding v. Estate of Sugarman*, 659 F.3d 258, 264–65 (3d Cir. 2011) (holding that Rule 1042.3 is a substantive rule of law that applies to state-law professional negligence cases brought in federal court). He opted to personally certify that "expert testimony of an appropriate licensed professional is unnecessary for prosecution of [his] claim," thus barring him from later offering expert testimony to establish the relevant professional standard of care or the breach thereof by these defendants. *See* Pa. R. Civ. P. 1042.3(a)(3) & note; *Liggon-Redding*, 659 F.3d at 265.

[3] *See also Royster v. Corizon*, Civil No. 3:CV-13-1449, 2014 WL 1655088 (M.D. Pa. Apr. 23, 2014).

proceed as against the DOC Defendants. Royster's Eighth Amendment claim regarding the change in his prescription dosage instructions and his related First Amendment retaliation claim were permitted to proceed as against the Corizon Defendants[4] and defendants Law and Shoop, each of whom appears to have served as the health care administrator for SCI Camp Hill at some point during the two-year period at issue in this case. Royster's state-law professional negligence / medical malpractice claim was dismissed with respect to the non-medical DOC Defendants, but permitted to proceed as against the Corizon Defendants and defendants Duncan, Gadsden, Gipe, Hamovitz, Henderson, Herb, Law, Liddick, McGrath, O'Brien, Quigley, Radie-Barrett, Shoop, Thiombiano, and Nurse Tiffany. (Doc. 22; Doc. 23).

The defendants filed their answers to the complaint and the parties conducted discovery. (Doc. 24; Doc. 25). On February 27, 2015, the Corizon Defendants and the DOC Defendants filed separate motions for summary

_____

[4] Although the Court indicated in its memorandum opinion that Corizon would be dismissed from the action for failure to state a claim under *Monell*, the accompanying order did not expressly dismiss Corizon and it has continued to appear jointly with Dr. Binnion and Dr. Voorstad, including its participation as a movant in filing the Corizon Defendants' motion for summary judgment. (*See* Doc. 22, at 13 n.4; Doc. 86).

judgment, together with supporting briefs and statements of material facts. (Doc. 86; Doc. 87; Doc. 88; Doc. 89; Doc. 90; Doc. 91; Doc. 92). Royster has filed briefs in opposition to both motions, as well as counter-statements of material facts and supporting declarations. (Doc. 102; Doc. 103; Doc. 104; Doc. 109; Doc. 110; Doc. 111). The Corizon Defendants have filed a reply brief. (Doc. 106).

## II. FACTUAL BACKGROUND

At the time of the events at issue in this case, Royster was an inmate at SCI Camp Hill, serving a term of life imprisonment for murder. At some time prior to March 31, 2011, Royster began seeking medical treatment for migraine headaches.[5] Over the two-year period at issue—between March 31, 2011, and March 31, 2013—Royster presented with migraine

_____

[5] The Court previously dismissed claims accruing prior to March 31, 2011, as barred by the statute of limitations. The medical records before the Court document several months of treatment prior to that, with the earliest migraine complaints or treatment occurring on January 5, 2011. Read in context, however, treatment notes suggest an ongoing course of complaints and treatment. In prior federal litigation, Royster appears to have alleged suffering from a migraine condition as early as July 2004. *See Royster v. Beard*, Civil No. 3:CV-05-2063, 2008 WL 3833210, at *2, *8 n.5 (M.D. Pa. Aug. 15, 2008) (considering allegations of migraines as a result of a July 2004 incident); *see also Royster v. Beard*, Civil Action No. 09-1150, 2013 WL 4786028, at *5 (W.D. Pa. Sept. 6, 2013) (considering allegations of "increased migraines" as a result of an April 2006 incident).

headaches and was treated with a variety of different medications—including Tylenol,[6] Excedrin,[7] Midrin,[8] Verapamil,[9] and Fioricet[10]—at various dosage levels and frequencies. The mix of medications and dosage levels and frequencies were modified several times throughout this period, including multiple times when Royster's medication regimen was disrupted by hunger strikes.[11]

Much of this time, Royster's headache medicine was prescribed on an "as needed" basis, subject only to a twice or three times daily dosage limit. But on this "as needed" basis, Royster would request the medication at the onset of a headache, and he claims that it would sometimes be hours or even the next day before he received the medicine. By that time, he had

---

[6] Tylenol (acetaminophen) is an over-the-counter pain reliever used to treat minor aches and pain.

[7] Excedrin is an over-the-counter pain reliever containing acetaminophen, aspirin, and caffeine, used to treat tension headaches and mild to moderate migraine headaches.

[8] Midrin is a prescription pain reliever containing acetaminophen, dichloralphenazone (a sedative), and isometheptene (a vasoconstrictor), used to treat tension headaches.

[9] Verapamil is a prescription medication used in an off-label manner to prevent migraine headaches.

[10] Fioricet is a prescription pain reliever and relaxant combining acetaminophen, butalbital (a barbiturate), and caffeine, used to treat tension headaches.

[11] Royster also received medication intended to treat other ailments.

suffered the effects of the headache for an extended period, and sometimes the delay was long enough that the headache had subsided, leading Royster to refuse the medication because it was no longer needed. Royster complained about these delays in delivering his medication repeatedly, both informally and by formal written grievance. These delays in the delivery of his medication form the basis of his Eighth Amendment claims against both sets of defendants.

Royster further claims that in March or April 2012, in retaliation for his complaints about the delayed delivery of his medication, his Fioricet prescription was changed by defendants Binnion, Voorstad, Law, and Shoop from "as needed" to twice daily at fixed times. On March 21, 2012, Royster met with non-party Corizon physician "V. Gandy" and advised him that he had told defendant Law that he would continue to write grievances if he was not given his medications when needed. (Doc. 87-8, at 66). Dr. Gandy advised him that "as needed" medications may not be administered at the exact time he requests them, but as soon as possible when Royster notified staff that he had headache symptoms. (*Id.*).

On March 22, 2012, Royster met with Dr. Binnion and discussed his dissatisfaction with his Fioricet prescription. (*Id.* at 60). Dr. Binnion

changed the Fioricet prescription from "twice daily as needed" to a regular "twice daily" dose. (*Id.*; *see also* Doc. 87-9, at 63). Royster apparently requested double the dose prescribed, prompting Dr. Binnion to note that the requested number of pills would exceed the permitted daily dose. (Doc. 87-8, at 60). In his treatment notes, Dr. Binnion recorded his impression that Royster's "[h]eadaches may be more stress-related than true migraine" headaches. (*Id.*).

On March 26, 2012, Royster met with a physician assistant, expressing his concern that the twice daily dosage, to be taken whether he had an active headache or not, might "poison" him. (*Id.* at 58). Royster acknowledged, however, that he and Dr. Binnion had agreed to try this change in his Fioricet regimen "to try to keep his migraines 'at bay.'" (*Id.*). The physician assistant reassured Royster that, taken as prescribed, the Fioricet should not "cause side effects [or] 'poison' him." (*Id.*).

On April 25, 2012, Royster met with Dr. Voorstad and expressed his dissatisfaction with the regular twice daily dosage of Fioricet, requesting a new prescription for three times daily as needed. (*Id.* at 54). Dr. Voorstad observed in his treatment notes that three times daily "would be too much." (*Id.*). At Royster's request, Dr. Voorstad changed the prescription

back to "twice daily as needed." (*Id.*; Doc. 87-9, at 63).

## III.   LEGAL STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is "genuine" only if the evidence "is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. In deciding a summary judgment motion, all inferences "should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Pastore v. Bell Tel. Co. of Pa.*, 24 F.3d 508, 512 (3d Cir. 1994).

The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion," and demonstrating the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant makes such a showing, the non-movant must set forth specific facts, supported by

the record, demonstrating that "the evidence presents a sufficient disagreement to require submission to the jury." *Anderson*, 477 U.S. at 251–52.

## IV. DISCUSSION

### A. Claims for Declaratory and Injunctive Relief

As a preliminary matter, the Court must consider whether Royster's claims for declaratory and injunctive relief are moot because "a federal court has neither the power to render advisory opinions nor to decide questions that cannot affect the rights of litigants in the case before them." *Sutton v. Rasheed*, 323 F.3d 236, 248 (3d Cir. 2003) (quoting *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975)); *see also Abdul-Akbar v. Watson*, 4 F.3d 195, 206 (3d Cir. 1993). In his complaint, Royster seeks a declaration by this Court that the defendants' conduct violated his constitutional rights, and an injunction ordering them to "correct" his medication orders. (Doc. 1-1, at 7).

A prisoner's transfer from the prison complained of generally moots his claims for prospective injunctive or declaratory relief. *Sutton*, 323 F.3d at 248; *Weaver v. Wilcox*, 650 F.2d 22, 27 n.13 (3d Cir. 1981). Such claims are not mooted when "a challenged action is (1) too short in duration to be

fully litigated prior to its cessation or expiration; and (2) there is a reasonable likelihood that the same complaining party would be subjected to the same action again." *Sutton*, 323 F.3d at 248 (alteration and internal quotation marks omitted). A prisoner's claim for damages is not mooted by a transfer. *Sutton*, 323 F.3d at 249; *Allah v. Seiverling*, 229 F.3d 220, 222 n.2 (3d Cir. 2000); *Weaver*, 650 F.2d at 27 n.13.

At the time of the events giving rise to this action, Royster was incarcerated at SCI Camp Hill, located in Cumberland County, Pennsylvania. On November 4, 2013, the Court received and docketed a letter from Royster advising that he had been transferred to SCI Mahanoy, located in Schuylkill County, Pennsylvania. (Doc. 9). On August 11, 2014, the Court received and docketed a letter from Royster advising that he had been transferred again, this time to SCI Greene, located in Greene County, Pennsylvania. (Doc. 41, at 5). Each of the defendants appears to be resident at SCI Camp Hill; as a result, Royster's claims for declaratory and injunctive relief are clearly moot.

Accordingly, it is recommended that the Court *sua sponte* dismiss Royster's claims for declaratory and injunctive relief.

## B. Eighth Amendment Claims

Royster has claimed that recurrent delays in the delivery of medication prescribed for his migraine condition left him to suffer with a severe headache for hours at a time. Royster has asserted that these delays violated his Eighth Amendment right against cruel and unusual punishment. Royster has further claimed that a temporary change to his prescription from an "as needed" basis (albeit subject to the aforementioned delays) to a fixed twice daily dosage in March and April 2012 violated his Eighth Amendment rights as well. The Corizon Defendants and the DOC Defendants have filed separate but substantially similar motions for summary judgment on these claims, arguing that Royster has failed to establish that they were deliberately indifferent to his serious medical needs.

In evaluating a motion for summary judgment, the Court must first determine if the moving party has made a *prima facie* showing that it is entitled to summary judgment. *See* Fed. R. Civ. P. 56(a); *Celotex*, 477 U.S. at 331. Only once that *prima facie* showing has been made does the burden shift to the nonmoving party to demonstrate the existence of a genuine dispute of material fact. *See* Fed. R. Civ. P. 56(a); *Celotex*, 477 U.S. at 331.

Both parties may cite to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motion only), admissions, interrogatory answers or other materials." Fed. R. Civ. P. 56(c)(1)(A). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). "Although evidence may be considered in a *form* which is inadmissible at trial, the *content* of the evidence must be capable of admission at trial." *Bender v. Norfolk S. Corp.*, 994 F. Supp. 2d 593, 599 (M.D. Pa. 2014); *see also Pamintuan v. Nanticoke Mem'l Hosp.*, 192 F.3d 378, 387 n.13 (3d Cir. 1999) (noting that it is not proper, on summary judgment, to consider evidence that is not admissible at trial).

The Eighth Amendment protects prisoners from cruel and unusual punishment, including "the unnecessary and wanton infliction of pain." *Hudson v. McMillian*, 503 U.S. 1, 5 (1992). To prevail on an Eighth Amendment claim, an inmate must show: (1) a deprivation that is objectively sufficiently serious; and (2) "a sufficiently culpable state of

mind" of the defendant official. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). There are different standards for Eighth Amendment violations depending on the type of claim. An Eighth Amendment challenge to prison conditions is subject to the deliberate indifference standard. *See id.* at 835–36. Prison officials are deliberately indifferent when they know of and disregard a substantial risk of harm to a prisoner. *Id.* at 836. Moreover, a prisoner must produce evidence of serious or significant physical or emotional injury resulting from the challenged prison condition. *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995).

The Eighth Amendment's prohibition of "unnecessary and wanton infliction of pain" includes "deliberate indifference to serious medical needs of prisoners." *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). In this context, "to establish a violation of [an inmate's] constitutional right to adequate medical care, evidence must show (i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." *Natale v. Camden County Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003).

With respect to the first prong of the *Estelle* standard, a serious medical need exists if failure to treat such condition would constitute a

"denial of the minimal civilized measure of life's necessities." *Farmer*, 511

U.S. at 825.

> [T]he concept of a serious medical need . . . has two components, one relating to the consequences of a failure to treat and one relating to the obviousness of those consequences. The detainee's condition must be such that a failure to treat can be expected to lead to substantial and unnecessary suffering, injury, or death. Moreover, the condition must be "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention."

*Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1023 (3d Cir. 1991) (quoting

*Monmouth County Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326,

347 (3d Cir. 1987)).

With respect to the second, deliberate indifference prong of the

*Estelle* standard, prison medical authorities are given considerable

latitude in the diagnosis and treatment of inmate patients. *Inmates of*

*Allegheny County Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979). Thus,

"[m]ere medical malpractice, negligence, and courses of treatment

inconsistent with the desires of the prisoner . . . do not constitute

deliberate indifference to serious medical needs." *Lopez v. Corr. Med.*

*Servs., Inc.*, 499 Fed. App'x 142, 146 (3d Cir. 2012). Instead, the evidence

must show that the defendant "knows of the prisoner's need for medical

treatment but intentionally refuses to provide it, delays necessary medical treatment for a non-medical reason, or prevents a prisoner from receiving needed medical treatment." *Id.* at 146.

In support of their motions for summary judgment, the defendants have relied on an expert report prepared by non-party osteopathic physician James Lamprakos (Doc. 87-3; Doc. 92-1) and a copy of Royster's institutional medical records (Doc. 87-4; Doc. 87-5; Doc. 87-6; Doc. 87-7; Doc. 87-8; Doc. 87-9; Doc. 87-10; Doc. 92-2).[12] Based upon a very detailed review of Royster's medical records,[13] Lamprakos provided his expert medical opinion that:

> Mr. Royster established drug seeking behavior with regard to his usage of Fioricet. Mr. Royster essentially stated that no drug provided to him for headache afforded him any significant relief over time, but Fioricet. Mr. Royster either claimed he had an allergy to anti-

---

[12] The Corizon defendants have submitted a complete copy of Royster's medical records from December 2010 through May 2014—a total of 436 pages—produced pursuant to a subpoena served on SCI Mahanoy, where Royster was incarcerated at the time of service. (Doc. 87-4; Doc. 87-5; Doc. 87-6; Doc. 87-7; Doc. 87-8; Doc. 87-9; Doc. 87-10). The DOC Defendants have submitted a smaller, 83-page set of Royster's medical records, generally limited to the period of March 2011 through April 2012. (Doc. 92-2). The smaller set of records submitted by the DOC Defendants appears to be entirely duplicative of the larger set submitted by the Corizon Defendants.

[13] (*See* Doc. 87-3, at 3–19; Doc. 92-1, at 2–18).

inflammatories or other medications he was given for his headache were ineffective (i.e. Tylenol, Imitrex etc.)[.] *There is no credible medical evidence based upon the review of the medical records that Mr. Royster displayed signs/symptoms of migraine headache.*

Fioricet contains 50 mg of butalibital (a short to intermediate-acting barbiturate[)], acetaminophen (Tylenol) 325 mg and caffeine 40 mg. Fioricet is indicated for the relief of the symptom complex of tension (or muscle contraction) headache. Evidence supporting the efficacy and safety of Fioricet in the treatment of multiple recurrent headaches is unavailable. Caution in this regard is required because butalbital is habit-forming and potentially abusable. . . . Tolerance, psychological dependence, and physical dependence may occur especially following prolonged use of high doses of barbiturates. The recommended prescribing dosage is 1 or 2 tablets every 4 hours as needed. Total daily dosage should not exceed 6 tablets. Extended and repeated use of Fioricet is not recommended because of the potential for physical dependence.

The records provided support that the medical team taking care of all of Mr. Royster's medical signs/symptoms acted to provide Mr. Royster with relief of his signs/symptoms in a safe and effective manner. *There was no evidence of neglect, but rather a steady and patient resolve by all medical professionals involved in his care to treat Mr. Royster's medical signs/symptoms. There was no evidence that any medical staff member displayed deliberate indifference in any way to Mr. Royster, especially with regard to prescribing Mr. Royster's Fioricet medication.* . . .

There was no evidence of retaliation by medical staff in March/April of 2012 (or for that fact any time period I was provided for review) against Mr. Royster regarding his Fioricet being changed from as needed to two times

daily at set times. *If Mr. Royster had a headache, ordering the medicine this way made it available to him twice a day instead of him requesting the medication and then going through the chain [of] command to get the actual medication to his cell.*

*The medical records support that the medical staff involved in treating Mr. Royster for all of his medical signs/symptoms as well as his headache complaints provided him with excellent medical care to alleviate his symptomatology effectively with no tangible evidence that Mr. Royster was caused undue pain for any significant period of time from March of 2011 until April 2012. . . .*

(Doc. 87-3, at 19–20; Doc. 92-1, at 18–19) (emphasis added). Royster has raised no substantive objection to the admissibility of Lamprakos's expert medical opinion.[14] *See generally* Fed. R. Civ. P. 56(c)(2).

Based on this evidence, the defendants have met their burden of making a *prima facie* showing that they are entitled to summary judgment

_____

[14] Royster's only objections are that the medical records upon which the Lamprakos report is based are "incomplete, haphazard and poorly maintained," and that the doctor's expert report is also "haphazard" and "confused," apparently because his summary of medical evidence is not entirely chronological. (Doc. 104, at 1). On their face, however, the voluminous medical records submitted by the defendants appear to be complete (or at least substantially so) and well-maintained. Moreover, the doctor's summary of medical evidence is in fact entirely comprehensible and generally presented in chronological order. Other than Royster's conclusory objections, there is nothing to suggest that the facts or data upon which Dr. Lamprakos's expert medical opinion is based are insufficient, nor that there is any other reason to reject his report and unreliable. *See generally* Fed. R. Civ. P. 702.

on the ground that the evidence fails to demonstrate a serious medical need. *See Natale*, 318 F.3d at 582; *see also* Fed. R. Civ. P. 56(a); *Celotex*, 477 U.S. at 331.[15]

Royster, in turn, has failed to meet his burden to demonstrate the existence of a genuine dispute of material fact by citing evidence in the record. *See* Fed. R. Civ. P. 56(a) & (c)(1)(A); *Celotex*, 477 U.S. at 331. In opposition to the motions for summary judgment, he has relied exclusively on his own declaration, on written responses by prison officials to several administrative grievances he filed, and on selected pages of his medical records (none of which actually contradict Dr. Lamprakos's conclusions). (Doc. 103; Doc. 104, at 3–7; Doc. 109, at 3–21; Doc. 111).

"[T]here are some injuries, like a gunshot wound, whose seriousness would be apparent to a lay person, whereas other injuries are not so easily classified as 'serious' and require expert medical opinion." *Miller v. Beard*, 699 F. Supp. 2d 697, 712 (E.D. Pa. 2010) (citing *Boring v. Kozakiewicz*, 833

---

[15] The Lamprakos report also establishes a *prima facie* case that the medical defendants were not deliberately indifferent to Royster's migraine condition in any event. But it does not address the subjective culpability of the non-medical defendants. Regardless, because Royster has not established a serious medical need, the Court need not reach the question of whether the defendants were deliberately indifferent to such a need.

F.2d 468, 473 (3d Cir. 1987)); *see also Heath v. Shannon*, 442 Fed. App'x 712, 716 (3d Cir. 2011) (per curiam) ("[A] prisoner's claim of deliberate indifference to a serious medical need requires expert testimony when the seriousness of the injury or illness would not be apparent to a lay person.") (citing *Boring*, 833 F.2d at 473–74). Migraine headaches generally fall into the latter category for which expert medical testimony is required. *See Boring*, 833 F.2d at 474 (concluding that a jury of laymen would not be in a position to decide whether migraine headaches could be classified as a serious medical need); *Royster v. Beard*, Civil Action No. 09-1150, 2013 WL 4786028, at *5 (W.D. Pa. Sept. 6, 2013) (finding complaints of "increased migraines" by this same plaintiff did not meet the Eighth Amendment's "serious medical need" requirement); *Miller*, 699 F. Supp. 2d at 712 ("An inmate might be able to demonstrate that migraine headaches rise to the level of a serious medical need that a lay person would recognize, but only if the inmate can provide evidence that the migraines are disabling."); *May v. Jones*, Civil Action No. 1:07-CV-1787, 2009 WL 4793031, at *4 (M.D. Pa. Dec. 7, 2009) (finding expert testimony unnecessary where inmate's migraine headaches were so severe that it was necessary for him to go to

the emergency room for shots of Toradol[16] on multiple occasions).

Royster has failed to submit any expert evidence in support of his claim that his migraine headaches rise to the level of a serious medical need. He has relied solely on his own declaration, in which he asserted in conclusory fashion that his "medical condition . . . was serious" (Doc. 103, at 1), that it constituted a "serious medical need[]" (*id.* at 2), and that it is "obvious" that a lay person could understand the nature of his condition without medical expert testimony (*id.*). But "[a]n affidavit that is essentially conclusory and lacking in specific facts is inadequate to satisfy the [summary judgment] movant or non-movant's burden." *Blair v. Scott Specialty Gases*, 283 F.3d 595, 608 (3d Cir. 2002) (quoting *Maldonado v. Ramirez*, 757 F.2d 48, 51 (3d Cir. 1985)) (brackets omitted). Royster has identified no evidence that his headaches were so severe that they were disabling. In the absence of expert evidence or any specific evidence that his headaches constituted a serious medical need, Royster has failed to meet his burden to demonstrate the existence of a genuine dispute of material fact. *See Boring*, 833 F.2d at 473–74; *Miller*, 699 F. Supp. 2d at

---

[16] Toradol (ketorolac) is a prescription medication used for the short-term treatment of moderate to severe pain in adults, usually after surgery.

712.

Accordingly, it is recommended that summary judgment be granted to the defendants with respect to Royster's Eighth Amendment claims on the ground that Royster has failed to demonstrate a serious medical need. *See Estelle*, 429 U.S. at 103–04; *Natale*, 318 F.3d at 582.

## C. Retaliation Claim

Royster has claimed that a temporary change to his prescription from an "as needed" basis to a fixed twice daily dosage in March and April 2012 constituted unconstitutional retaliation against him for filing grievances about the recurring delays in delivery of his "as needed" Fioricet prescription. The Corizon Defendants and the DOC Defendants have filed separate but substantially similar motions for summary judgment on this claim, arguing that Royster has failed to establish that he suffered any adverse action or a causal link between his exercise of a constitutional right and such adverse action.

To prevail on a retaliation claim, a prisoner must establish the following elements: (1) constitutionally protected conduct; (2) an adverse action by prison officials that is sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) a causal link

between the exercise of his constitutional rights and the adverse action taken against him. *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003). The defendants here do not dispute that "[t]he filing of grievances is protected under the First Amendment." *Kelly v. York County Prison*, 340 Fed. App'x 59, 61 (3d Cir. 2009) (per curiam). Although they contend that the change to Royster's Fioricet prescription did not constitute an adverse action,[17] the dispositive issue here is the absence of a causal link between Royster's filing of grievances and the modification of his Fioricet prescription in March and April 2012.

To evaluate the existence of a causal link, the Third Circuit has adopted a burden-shifting analysis: the prisoner-plaintiff bears the initial burden of proving that his constitutionally protected conduct was a substantial or motivating factor in the decision to take adverse action

---

[17] Although some actions may be so *de minimis* or inconsequential that they are insufficient to support a retaliation claim as a matter of law, insofar as they could not conceivably deter a prisoner of ordinary firmness from exercising his constitutional rights, it is not clear that a reasonable jury could not conclude on this record that the modification of Royster's prescription was a non-*de minimis* adverse action, particularly in light of his contention that it actually reduced the number of pills he could receive. *See generally Allah v. Seiverling*, 229 F.3d 220, 25 (3d Cir. 2000); *Hardwick v. Packer*, Civil Action No. 1:12-cv-1936, 2013 WL 4016495, at *18 (M.D. Pa. Aug. 6, 2013); *Wheeler v. Beard*, No. Civ.A.03-4826, 2005 WL 1840159, at *4 n.2 (E.D. Pa. Aug. 3, 2005).

against him; and once a prisoner has made his *prima facie* case, the burden shifts to the defendant to prove by a preponderance of the evidence that he would have taken the same adverse action even in the absence of the protected activity, for reasons reasonably related to penological interest. *Carter v. McGrady*, 292 F.3d 152, 157–58 (3d Cir. 2002); *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001).

> In addition, in establishing the elements of a First Amendment claim of retaliation, a plaintiff must come forward with more than "general attacks" upon the defendant's motivations and must produce "affirmative evidence" of retaliation from which a jury could find that the plaintiff had carried his burden of proving the requisite motive.

*Fisher v. Matthews*, 792 F. Supp. 2d 745, 772 (M.D. Pa. 2011) (quoting *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998)).

In opposition to the two motions for summary judgment, Royster has filed declarations pursuant to 28 U.S.C. § 1746 in which he has stated that "Dr. Binnion and T. Law told plaintiff the Fioricet order was changed to prevent plaintiff from filing more complaints about the delivery" (Doc. 103, at 1) and that "Defendant Law along with a doctor told plaintiff that his medication order was changed to set times to prevent him from filing grievances concerning not receiving the medication" (Doc. 111, at 2). He

has also submitted written responses by prison officials to several administrative grievances he filed to complain about the delayed delivery of his medication. (Doc. 109, at 3–4, 12–18). The most recent of these grievances appears to have been filed on December 13, 2011, more than three months before Royster's Fioricet prescription was modified. (*Id.* at 15).

Meanwhile, the defendants have submitted a medical expert report and Royster's actual medical records in support of their motions for summary judgment. Royster's medical records indicate that he met with Dr. Binnion on March 22, 2012, to discuss his Fioricet prescription—Royster was dissatisfied with the delayed delivery of his "as needed" medication—and Dr. Binnion changed the prescription from "twice daily as needed" to a regular "twice daily" dose.[18] (Doc. 87-8, at 60; Doc. 87-9, at 63). A few days later, Royster discussed his concerns with a physician assistant about taking the medication regularly rather than as needed, but expressly stated to the physician assistant "that he does not want it

_____

[18] The Court notes that the evidence of record links Dr. Binnion alone to this action. There is nothing to suggest any personal involvement in the alleged retaliation by any of the other defendants. *See, e.g.*, *Moolenaar v. Champagne*, No. 9:03-CV-1464, 2006 WL 2795339, at *8 (N.D.N.Y. Sept. 26, 2006).

removed [because] this is what him and the doctor decided to try to keep his migraines 'at bay.'" (Doc. 87-8, at 58). One month later, on April 25, 2012, Royster met with Dr. Voorstad and complained that the fixed twice-daily dose of Fioricet was "not working well" and he continued to suffer headaches. (*Id.* at 54). Dr. Voorstad changed the prescription back to "twice daily as needed." (*Id.*; Doc. 87-9, at 63). Based on these and the other medical records he reviewed, Dr. Lamprakos explained that "ordering the medicine this way made it available to [Royster] twice a day instead of him requesting the medication and then going through the chain [of] command to get the actual medication to his cell." (Doc. 87-3, at 20; Doc. 92-1, at 19).

Although it is clear from the evidence that Dr. Binnion modified the prescription in response to Royster's complaints that he was not receiving his "as needed" prescription medicine in a timely fashion, Royster has failed to adduce any affirmative evidence that this action was retaliatory, as opposed to a routine medical decision made in an effort to effectively treat Royster's migraine condition, subject to the limitations inherent in the treatment of an incarcerated patient. Moreover, there is neither a temporal proximity between Royster's filing of grievances and the

prescription change nor a pattern of antagonism following the filing of grievances from which a retaliatory motive or causation may be reasonably inferred. *See Hawkins v. Brooks*, 694 F. Supp. 2d 434, 444–45 (W.D. Pa. 2010). Even if Dr. Binnion was aware that Royster had filed formal grievances about his Fioricet prescription—and there is no evidence that he was—the mere knowledge that a grievance had been filed is insufficient to demonstrate a retaliatory motive. *See Carter v. Kane*, 938 F. Supp. 282, 288 (E.D. Pa. 1996). Based on this evidence, no reasonable jury could conclude that Dr. Binnion's decision to modify Royster's Fioricet prescription from "twice daily as needed" to a regular "twice daily" dose was motivated by retaliatory animus.

Accordingly, it is recommended that summary judgment be granted to the defendants with respect to Royster's First Amendment retaliation claim on the ground that Royster has failed to demonstrate a causal link between his filing of grievances and the modification of his Fioricet prescription in March and April 2012. *See Mitchell*, 318 F.3d at 530; *Fisher*, 792 F. Supp. 2d at 772.

### D. Professional Negligence / Medical Malpractice Claim

Royster has also asserted a state law professional negligence /

medical malpractice claim against the various medical professional defendants. Royster contends that the failure of prison medical staff to promptly deliver his migraine medication and the decision by certain medical defendants to change his Fioricet prescription from an "as needed" basis to twice daily, whether he had a headache or not, constituted professional negligence.

To recover on a medical malpractice claim under Pennsylvania law, a plaintiff must establish: "(1) the physician owed a duty to the patient; (2) the physician breached that duty; (3) the breach of duty was the proximate cause of, or a substantial factor in, bringing about the harm suffered by the patient; and (4) the damages suffered by the patient were a direct result of that harm." *Hoffman v. Brandywine Hosp.*, 661 A.2d 397, 399 (Pa. Super. Ct. 1995). Further, the plaintiff generally must present an expert who will testify, to a reasonable degree of medical certainty, that the acts of the defendants deviated from the acceptable medical standards, and that the deviation constituted a substantial factor in causing the plaintiff's injury. *McCabe v. Prison Health Servs.*, 117 F. Supp. 2d 443, 456 (E.D. Pa. 1997).

Royster has not adduced any expert evidence in support of his

medical malpractice claim. Indeed, in connection with the substantive state law requirement that he file a certificate of merit with his complaint, Royster opted to personally certify that expert testimony was unnecessary for the prosecution of his malpractice claim, thus barring him from later offering expert testimony to establish the relevant professional standard of care of the breach thereof. *See supra* note 2.

Under Pennsylvania law, the only exception to the requirement of expert witness testimony in medical malpractice cases is where the matter is "so simple, and lack of skill or want of care so obvious, as to be within the range of ordinary experience and comprehension of even non-professional persons." *Hightower-Warren v. Silk*, 698 A.2d 52, 54 n.1 (Pa. 1997). Malpractice cases that do not require expert testimony generally involve "gross incompetence." *See McCool v. Dep't of Corr.*, 984 A.2d 565, 571 (Pa. Commw. Ct. 2009); *see also, e.g.*, *Lambert v. Soltis*, 221 A.2d 173, 176 (Pa. 1966) ("[F]or example, where a gauze pad is left in the body of a patient following an operation, . . . where a surgeon engaged in removing a tumor from a patient's scalp would let his knife slip and cut off his patient's ear, or where he undertook to stitch a wound on his patient's cheek and . . . thrust his needle into the patient's eye."); *Smith v. Yohe*, 194

A.2d 167, 172–73 (Pa. 1963) (expert testimony not necessary where physician failed to take diagnostic x-rays to rule out the possibility of fractures after an elderly patient had fallen, causing paralysis on one side, extreme pain, and obvious displacement). Even viewing the undisputed facts in the light most favorable to Royster, the non-moving party, it is far from clear that the conduct described by Royster rises to the level of gross incompetence, and therefore, expert testimony is necessary to establish the elements of his medical malpractice claim. *Cf. Boring*, 833 F.2d at 473–74; *Miller*, 699 F. Supp. 2d at 712.

Accordingly, it is recommended that summary judgment be granted to the defendants with respect to Royster's professional negligence / medical malpractice claim on the ground that Royster has failed to adduce any evidence that the acts of the defendants deviated from the acceptable medical standards, and that the deviation constituted a substantial factor in causing injury to him. *See McCabe*, 117 F. Supp. 2d at 456.

## V.   RECOMMENDATION

For the foregoing reasons, it is recommended that:

1.     The plaintiff's claims for declaratory and injunctive relief be **DISMISSED as MOOT**;

2.     The defendants' motions for summary judgment (Doc. 86; Doc. 89) be **GRANTED** with respect to the plaintiff's remaining claims; and

3.     The Clerk be directed to enter judgment in favor of the defendants and against the plaintiff on all counts of the complaint (Doc. 1-1).

**Dated: September 30, 2015**                     *s/ Joseph F. Saporito, Jr.*
                                                           **JOSEPH F. SAPORITO, JR.**
                                                           **United States Magistrate Judge**

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

TELLY ROYSTER,

    Plaintiff,

    v.

PETER BINNION, et al.,

    Defendants.

CIVIL ACTION NO. 3:13-CV-01449

(CAPUTO, J.)
(SAPORITO, M.J.)

## NOTICE

    NOTICE IS HEREBY GIVEN that the undersigned has entered the foregoing Report and Recommendation dated September 30, 2015. Any party may obtain a review of the Report and Recommendation pursuant to Local Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636(b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may

accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

**Dated: September 30, 2015**                    *s/ Joseph F. Saporito, Jr.*
                                                 **JOSEPH F. SAPORITO, JR.**
                                                 **United States Magistrate Judge**