**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

TELLY ROYSTER,

    Plaintiff,

        v.

PETER BINNION, et al.,

    Defendants.

NO. 3:13-CV-01449

(JUDGE CAPUTO)

(MAGISTRATE JUDGE SAPORITO)

**MEMORANDUM**

Presently before me is the Report and Recommendation ("R&R") of Magistrate Judge Saporito (Doc. 112) to Defendants' motions for summary judgment. (Docs. 86, 87, 88, 90, 91, 92). Magistrate Judge Saporito recommends that Plaintiff's claims for declaratory and injunctive relief be dismissed as moot, and Defendants' motions for summary judgment be granted with respect to Plaintiff's remaining federal and state law claims. I will adopt in part and reject in part Magistrate Judge Saporito's recommendation. Because Plaintiff does not contest Magistrate Judge Saporito's recommendation to dismiss Plaintiff's claims for declaratory and injunctive relief as moot, I will adopt that recommendation and dismiss Plaintiff's declaratory and injunctive relief claims with prejudice. Because Plaintiff failed to raise genuine issues of material fact with regard to his remaining federal law claims, I will adopt Magistrate Judge Saporito's recommendation to grant Defendants' summary judgment with respect to those claims, which will be dismissed with prejudice. Because those federal law claims set the basis for this Court's jurisdiction, unlike Magistrate Judge Saporito, however, I will decline to exercise supplemental jurisdiction over Plaintiff's pendent state law claims and will dismiss them without prejudice.

**I. Background**

Plaintiff Telly Royster ("Plaintiff") is a state prisoner who, at the time of the alleged wrongful conduct, was confined at the State Correctional Institution in Camp Hill ("SCI Camp Hill"), located in Cumberland County, Pennsylvania. He is currently incarcerated at SCI Greene in Greene County, Pennsylvania.

On April 3, 2013, Plaintiff commenced this *pro se* civil rights action in the Court of Common Pleas of Cumberland County bringing claims pursuant to 42 U.S.C. § 1983 against thirty-two defendants. These include Corizon, a private contract care medical provider at SCI Camp Hill, and its two employees, Drs. Binnion and Voorstad (collectively "Corizon Defendants"), and Pennsylvania Department of Corrections employees at SCI Camp Hill (collectively "DOC Defendants"). On May 30, 2013, the matter was removed to the United States District Court for the Middle District of Pennsylvania. (Doc. 1-3).

In his complaint, Plaintiff alleges that he suffers from migraines, which have been treated with a variety of prescription medications dispensed on an "as needed" basis. (Doc. 1-1, Compl. ¶¶ 6-11). He contends that between March of 2011 and April of 2012, there were approximately forty-five (45) instances when he requested his medication from prison staff but either was forced to wait six hours before receiving it or did not receive it at all. *Id.* ¶ 12. Plaintiff repeatedly complained about the delays in the delivery of his medication, both informally and by filing formal grievances. These delays form the basis of Plaintiff's Eighth Amendment claims against both Corizon and DOC Defendants.

Plaintiff further alleges that in April 2012, his medication dispensing instructions were modified from "as needed" to "twice daily" in retaliation for his complaints about the undelivered medication. Id. ¶ 18. Plaintiff claims that this change in the availability of his

medication was harmful because it required him to take the medication regardless of whether he was suffering from a headache or not, and effectively revoked his ability to request his medication promptly at the onset of his headache, forcing him to repeatedly wait in excruciating pain until his next scheduled dose became available. Id. ¶ 20. Plaintiff claims that the alleged retaliation violated his First Amendment rights.

Finally, Plaintiff alleges that Defendants have been negligent towards his medical needs and have committed medical malpractice under state tort law. (Doc 1-1, Compl. ¶¶ 30-34). Plaintiff's complaint seeks declaratory and injunctive relief, as well as compensatory and punitive damages.

On July 12, 2013, Defendants filed two separate motions to dismiss the complaint for failure to state a claim, which I granted in part and denied in part. (Docs. 6, 19, 23). I permitted: 1) Plaintiff's Eighth Amendment claim related to the delayed, or failed, delivery of his migraine medication against the DOC Defendants; 2) Plaintiff's Eighth Amendment claim regarding the change in his prescription dosage instructions and his related First Amendment retaliation claim against Corizon Defendants and two SCI Camp Hill health care coordinators, Shoop and Law; and 3) Plaintiff's state law negligence/medical malpractice claim against Corizon Defendants and DOC Defendants Duncan, Gadsden, Gipe, Hamovitz, Henderson, Herb, Law, Liddick, McGrath, O'Brien, Quigley, Radie-Barrett, Shoop, Thiombiano, and Nurse Tiffany. (Docs. 22, 23).

On February 27, 2015, following discovery, Defendants filed two separate motions for summary judgment. (Doc. 86; Doc. 87; Doc. 88; Doc. 89; Doc. 90; Doc. 91; Doc. 92). Plaintiff filed briefs in opposition to both motions, (Doc. 102; Doc. 103; Doc. 104; Doc. 109; Doc. 110; Doc. 111), and Corizon Defendants filed a reply brief. (Doc. 106).

On September 30, 2015, Magistrate Judge Saporito issued an R&R recommending that Plaintiff's claims for declaratory and injunctive relief be dismissed as moot, and Defendants' motions for summary judgment be granted with respect to the remaining federal and state law claims.

On December 19, 2015, Plaintiff filed his objections to the R&R. The matter is now ripe for disposition.

## II. Legal Standard

**A.    Review of a Magistrate Judge's Report and Recommendation**

Where objections to the Magistrate Judge's report are filed, the court must conduct a *de novo* review of the contested portions of the report, *see Sample v. Diecks*, 885 F.2d 1099, 1106 n. 3 (3d Cir.1989) (citing 28 U.S.C.A. § 636(b)(1)(c)), provided the objections are both timely and specific. *See Goney v. Clark*, 749 F.2d 5, 6–7 (3d Cir.1984). In making its *de novo* review, the court may accept, reject, or modify, in whole or in part, the factual findings or legal conclusions of the magistrate judge. *See* 28 U.S.C.A. § 636(b)(1); *Owens v. Beard*, 829 F.Supp. 736, 738 (M.D. Pa. 1993). Although the review is *de novo*, the statute permits the court to rely on the recommendations of the magistrate judge to the extent it deems proper. *See United States v. Raddatz*, 447 U.S. 667, 675–76, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980); *Goney*, 749 F.2d at 7; *Ball v. United States Parole Comm'n*, 849 F.Supp. 328, 330 (M.D. Pa. 1994). Uncontested portions of the report may be reviewed at a standard determined by the district court. *See Thomas v. Arn*, 474 U.S. 140, 154, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Goney*, 749 F.2d at 7. At the very least, the court should review uncontested portions for clear error or manifest injustice. *See, e.g., Cruz v. Chater*,

990 F.Supp. 375, 376–77 (M.D. Pa. 1998).

**B.      Summary Judgment**

Summary judgment is appropriate under Fed. R. Civ. P. 56(c) when the moving party demonstrates that there is no genuine issue of material fact and the evidence establishes the moving party's entitlement to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Carrasca v. Pomeroy*, 313 F.3d 828, 832-33 (3d Cir. 2002). A factual dispute is genuine if a reasonable jury could return a verdict for the nonmovant, and it is material if, under the substantive law, it would affect the outcome of the suit. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Although entitled to the benefit of all justifiable inferences from the evidence, *id.* at 255, the nonmoving party may not, in the face of a showing of a lack of a genuine issue, withstand summary judgment by resting on mere allegations or denials in the pleadings; rather, that party must set forth "specific facts showing that there is a genuine issue for trial," else summary judgment, "if appropriate," will be entered. Fed. R. Civ. P. 56(e). This is so because, "[i]n considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence." *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255).

As such, a moving party is obligated to meet "the burden of supporting [its] motion[] 'with credible evidence . . . that would entitle [that party] to a directed verdict if not controverted at trial.'" *In re Bressman*, 327 F.3d 229, 237 (3d Cir. 2003) (quoting *Celotex*, 477 U.S. at 331); *see also United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1438 (11th Cir. 1991) ("[T]he moving party . . . must show that, on all the essential elements of its

case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party") (emphasis removed, internal citations omitted). Once the moving party has satisfied its burden, the party opposing the motion must establish that a genuine issue as to a material fact exists. *See Jersey Cent. Power & Light Co. v. Lacey Twp.*, 772 F.2d 1103, 1109 (3d Cir. 1985). Hence, the party opposing the motion for summary judgment cannot rest merely on its allegations and must present actual evidence that creates a genuine issue as to a material fact for trial. *See Anderson*, 477 U.S. at 248; *Siegel Transfer, Inc. v. Carrier Express, Inc.*, 54 F.3d 1125, 1130-31 (3d Cir. 1995). "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment." *Schoch v. First Fid. Bancorporation*, 912 F.2d 654, 657 (3d Cir. 1990); *see also* Fed. R. Civ. P. 56(e) (requiring nonmoving party to "set forth specific facts showing that there is a genuine issue for trial").

### III. Discussion

At the core of this litigation are Plaintiff's § 1983 actions, alleging that Defendants have violated Plaintiff's rights under the First and Eighth Amendments. These federal law claims also set the basis for this Court's jurisdiction. Thus, I will initially determine whether Plaintiff's First and Eighth Amendment claims survive Defendants' summary judgment challenge.

**A.    Eight Amendment Claims**

The Eighth Amendment to the United States Constitution prohibits "cruel and unusual punishment." U.S. Const. amend. VII. A plaintiff who alleges, pursuant to § 1983, that a failure to provide medical care in prison violates the Eighth Amendment must demonstrate

6

the defendant's "deliberate indifference" to the prisoner's "serious medical need." *Estelle v. Gamble* 429 U.S. 97, 104-105, 97 S. Ct. 285 (1976).

A serious medical need is a need diagnosed by a physician, that a physician believes to require medical treatment, or that is "so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth County Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (citation omitted); *see also Atkinson v. Taylor*, 316 F.3d 257, 273 (3d Cir. 2003).

To demonstrate deliberate indifference, an inmate must show that the officials he is suing "knew of and disregarded an excessive risk to [the] inmate's health." *Natale v. Camden Cty. Corr. Facility, 318 F.3d 575, 582 (3d Cir. 2003)* (citing *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S. Ct. 1970 (1994)). The Third Circuit has found deliberate indifference "in situations where there was objective evidence that a plaintiff had serious need for medical care, and prison officials ignored that evidence." *Id.* at 582.

In addition, "only 'unnecessary and wanton infliction of pain' or 'deliberate indifference to the serious medical needs' of prisoners are sufficiently egregious to rise to the level of a constitutional violation." *Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004) (quoting *White v. Napoleon*, 897 F.2d 103, 108-109 (3d Cir. 1990)) (citation omitted). Notably, "[a]llegations of medical malpractice are not sufficient to establish a Constitutional violation." *Id.* Moreover, "mere disagreement as to the proper medical treatment is also insufficient." *Id.* (citing *Monmouth County*, 834 F.2d at 346).

Finally, neither inconsistencies nor differences in medical diagnoses, or refusal to consider inmate's preferences can amount to cruel and unusual punishment. *See White* 897

F.2d at 110; *Pilkey v. Lappin*, 2006 WL 1797756, at *3 (D.N.J. June 26, 2006) ("Plaintiff's dissatisfaction with the promptness and frequency of treatment, since it [was] not as speedy or as relentless as Plaintiff desire[d,] . . . fail[s] to state a claim upon which a relief may be granted.") *Alsina-Ortiz v. Laboy*, 400 F.3d 77 (1st Cir. 2005) (a doctor's failure to respond to certain request for services by the inmate, in context of the doctor's continued and regular services, did not deprive the inmate of any meaningful treatment).

Plaintiff asserts that recurrent delays in the delivery of his headache medication as well as a temporary change in how the medication was dispensed violated his Eighth Amendment right against cruel and unusual punishment. He has produced no evidence, however, to support his claim that Defendants failed to provide him with proper medical care in violation of his Eighth Amendment rights.

Plaintiff fails to show that the delay constitutes a deviation from the standard of care in correctional medicine because prison authorities are allowed considerable latitude in the diagnosis and treatment of inmates. *Durmer v. O'Carroll*, 991 F.2d 64, 67 (3d Cir. 1993). Even if the delay in providing Plaintiff with his medication constituted negligence or medical malpractice, indications of negligence or medical malpractice are not sufficient to establish an Eighth Amendment violation. *Spruill*, 372 F.3d at 235.

Further, Plaintiff fails to present any evidence that he suffered from a "serious medical condition" while at SCI Camp Hill.  Plaintiff complains about the delay in treatment for his alleged migraines, but fails to provide proof of ever having been diagnosed with a migraine. In fact, in his treatment notes, Dr. Binnion opined that Plaintiff's "[h]eadaches may be more stress-related than true migraine[s]." (Doc. 87-8   60). Defendants' expert physician, Dr. James Lamprakos, who prepared a detailed report based on a review of Plaintiff's medical

records, concluded that "[t]here is no credible medical evidence based upon the review of the medical records that [Plaintiff] displayed signs/symptoms of migraine headache." (Doc. 87-3, at 19-20). Rather, Dr. Lamprakos' opinion is that Plaintiff "established drug seeking behavior with regard to his usage of Fioricet," a barbiturate-based prescription pain reliever and relaxant. (Doc. 87-3, at 18-19). Relying on *May v. Jones*, 2009 WL 4793031, at *4 (M.D. Pa. Dec. 7, 2009), Plaintiff argues in his objections to the R&R that his alleged symptoms do rise to the level of a serious medical condition. (Doc. 117, ¶ 8). The plaintiff in *May* experienced "excruciating migraine headaches," resulting in vomiting, inability to eat or sleep for forty-eight hours. Aside from Plaintiff's last minute claims of experiencing symptoms that track those in *May*, however, no such symptoms are documented in his medical records. (*See* Docs. 87-5, 87-6, 87-7, 87-8, 87-9, 87-10). It may be telling that, at least in one instance, Plaintiff may have "put his finger down his throat to induce vomiting." (Doc. 87-3, at 13).

Finally, Plaintiff fails to demonstrate any evidence showing that the delays in the receipt of the medication amount to deliberate indifference on Defendants' part. After a review of Plaintiff's prison medical records, Dr. Lamprakos concluded that "the medical team taking care of all of [Plaintiff's] medical signs/symptoms acted to provide [him] with relief of his signs/symptoms in a safe and effective manner." (Doc 87-3, at 19). In fact, the modification of Plaintiff's medication regimen actually provided him with an enhanced ability to treat his headache because it guaranteed him his prescribed medication twice a day instead "going through the chain command to get the actual medication to his cell." *Id.* The record shows that Defendants consistently provided Plaintiff with medical care throughout

9

his time at SCI Camp Hill. (*See* Docs. 87-5, 87-6, 87-7, 87-8, 87-9, 87-10).

Thus, Plaintiff's Eighth Amendment claim is without sufficient support to survive a motion for summary judgment.

## B.     First Amendment Claims

Plaintiff claims that a temporary change to his prescription from an "as needed" basis to a fixed daily dosage in March and April 2012 constituted retaliation against him for filing grievances about the frequent delays in delivery of his headache medication in violation of his First Amendment rights.

"Retaliation for the exercise of constitutionally protected rights is itself a violation of rights secured by the Constitution . . . ." *White*, 897 F.2d at 111-12. To prevail on a retaliation claim, plaintiff must demonstrate that (1) he engaged in constitutionally-protected activity; (2) he suffered, at the hands of a state actor, adverse action "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights;" and (3) the protected activity was a substantial or motivating factor in the state actor's decision to take adverse action. *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir.2001) (quoting *Allah v. Seiverling*, 229 F.3d 220, 225 (3d Cir.2000)).

*Rauser*'s third prong, which concerns causation, is dispositive here. To establish the requisite causal connection, a plaintiff usually must prove one of two things: (1) "an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action" or (2) "a pattern of antagonism coupled with timing to establish a causal link." *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir.2007). If neither showing is made, the plaintiff must show that, from the evidence in the record as a whole, the trier of

10

fact should infer causation. *Id.* Additionally, "a plaintiff must come forward with more than 'general attacks' upon the defendant's motivations and must produce "affirmative evidence" of retaliation." *Fisher v. Matthews*, 792 F. Supp. 2d 745, 772 (M.D. Pa. 2011) (quoting *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998)).

Here, Plaintiff has not set forth any evidence to suggest that his grievances were a substantial or motivating factor in any of the prison officials' actions that he challenges. Nor has he shown an "unusually suggestive" proximity in time or "a pattern of antagonism coupled with timing" between any of his grievances and the change in his medication regimen. Plaintiff's evidence is confined only to a few conclusory and otherwise unsupported claims. For instance, Plaintiff alleges in his objections to the R&R that the prison medical staff was "aware of his grievances and complaints and to prevent him from filing more was the sole reason his prescription was modified," and that "there is clear evidence in the record which is undisputed by defendants and even [Magistrate Judge Saporito] in [the] factual background to show a casual connection between [Plaintiff's] filing grievances/making complaints and his Fioricet order being modified." (Doc. 117, ¶ 17, 18). As such, the evidence Plaintiff submits to support his First Amendment does not rise above mere "general attacks" on Defendants' motivations. *See Crawford-El*, 523 U.S. at 600. Notably, the record is devoid of any "affirmative evidence" from which a jury could find the alleged requisite retaliatory motive. *Id*.

There is also no evidence of a pattern of antagonism following the filing of grievances from which a retaliatory motive or causation may be reasonably inferred. Even if Dr. Binnion was aware that Plaintiff had filed formal grievances about his prescription order modification, it would not suffice to demonstrate that Dr. Binnion's decision to change the order was in any

11

way motivated by the filed grievances. This is because an essential element of a § 1983 retaliation claim is a showing that Plaintiff's exercise of a right was a "substantial or motivating" factor in Defendant's decision, for which there is no evidence here. *See Mt. Healthy City Bd. of Education v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 576 (1977).

In his objection to the R&R, Plaintiff argues that the chronology of events supports his retaliation claim. Specifically, he points to Defendants' Statement of Material Facts, (Doc 90, at 8), which states that "[o]n March 21, 2012, Plaintiff complained that the medications were not being promptly provided to him as needed." Plaintiff argues that the modification of his medication dispensation order the very next day, on March 22, 2012, proves "a casual connection between his filing grievances ... and his [medication] order being modified." (Doc. 117, ¶¶ 12-18).

The timing of the change in the medication regimen fails to suggest a causal link. There is nothing in the record that would permit a reasonable inference that the decisions concerning the prescription modification would have been any different absent his filing of grievances. In fact, in his expert report, Dr. Lamprakos states that the modification of Plaintiff's medication regimen actually enhanced the ability to treat the symptoms because it guaranteed Plaintiff his prescribed medication twice a day instead of "going through the chain command to get the actual medication to his cell," which sometimes resulted in delays. (Doc. 87-3, 19). Plaintiff himself acknowledged that the modification was an effort to help alleviate and prevent the headaches when he explained to a physician's assistant that he and Dr. Binnion agreed to try the new medication regimen "to try to keep his migraines at bay." (Doc. 87-8, at 58). In fact, the record indicates that shortly afterwards, when Plaintiff expressed displeasure with the new regimen, Dr. Voorstad changed the prescription back

12

to "twice daily as needed." (*Id.*; Doc. 87-9, at 63). Also, the modification of the dispensation order occurred well after Plaintiff filed a grievance complaining about the delayed delivery of his medication. The most recent of these grievances appears to have been filed on December 13, 2011, more than *three months* before Plaintiff's prescription was modified. (Doc. 109, at 15). Rather than retaliation, the record shows multiple attempts by the medical staff to accommodate Plaintiff's needs.

Thus, Plaintiff has not raised a genuine issue of material fact as to *Rauser*'s causation element. As such, summary judgment in favor of Defendants is appropriate as to this claim.

**C.   Declaratory and Injunctive Relief Claims**

In his complaint, Plaintiff also seeks a declaration that Defendants' conduct violated his constitutional rights and an injunction ordering them to "correct" the medication dispensing instruction. (Doc. 1-1, ¶ 7). Magistrate Judge Saporito recommended that Plaintiff's claims for declaratory and injunctive relief be dismissed as moot because Plaintiff's transfer from the prison complained of mooted his claims for prospective injunctive and declaratory relief. *See Sutton v. Rasheed*, 323 F.3d 236, 248 (3d Cir.2003).

A court makes a *de novo* determination only of those portions of the proposed recommendations to which objections are made. *Henderson v. Carlson*, 812 F.2d 874, 877 (3d Cir. 1987). Because Plaintiff did not object to the recommendation that his claims for declaratory and injunctive relief be dismissed as moot, I will adopt it in its entirety.

**D.   Pendent State Law Claims**

Given that Defendants' motions for summary judgment on Plaintiff's constitutional claims will be granted, unlike Magistrate Judge Saporito, I decline to exercise supplemental

13

jurisdiction over Plaintiff's pendent state law claims. Pursuant to 28 U.S.C. 1367(c)(3), this Court may decline to exercise supplemental jurisdiction if it has "dismissed all claims over which it has original jurisdiction." This Court has no original jurisdiction over Plaintiff's state law tort claims. As such, Plaintiff's pendent state law claims will be dismissed without prejudice. He is free to pursue his state law claim in state court.

## IV. Conclusion

Because Plaintiff failed to raise genuine issues of material fact with regard to his First and Eighth Amendment claims, I will adopt Magistrate Judge Saporito's recommendation to grant Defendants' summary judgment with respect to those claims, which will be dismissed with prejudice. Because those federal law claims set the basis for this Court's jurisdiction, however, Plaintiff's remaining state law medical claims will be dismissed without prejudice. Finally, because Plaintiff does not contest Magistrate Judge Saporito's recommendation to dismiss Plaintiff's claims for declaratory and injunctive relief as moot, I will adopt that recommendation and will dismiss Plaintiff's declaratory and injunctive relief claims with prejudice.

For the foregoing reasons, I will adopt in part and reject in part Magistrate Judge Saporito's Report and Recommendation and dismiss the matter.

An appropriate order follows.


September 2, 2016  /s/ A. Richard Caputo
Date  A. Richard Caputo
  United States District Judge